1

2

3

4

5

6                           IN THE UNITED STATES DISTRICT COURT

7

8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    JAMES HALSEY,

10          Plaintiff,                              No. C 08-01335 JSW

11   v.

12   JP MORGAN CHASE BANK,                          **ORDER REGARDING CROSS-
                                                    MOTIONS FOR SUMMARY**
13          Defendant.                              **JUDGMENT**

14   _____/

15

16          Now before the Court is the motion for summary judgment filed by Defendant JP

17   Morgan Chase Bank ("Chase") and the cross-motion for partial summary judgment filed by

18   Plaintiff James Halsey ("Halsey").  Having carefully considered the parties' arguments and the

19   relevant legal authority, the Court hereby grants in part and denies in part Chase's motion and

20   denies Halsey's cross-motion.[1]

21                                       **BACKGROUND**

22          In late May 2006, Chase hired Halsey as a northern California account executive within

23   the Correspondent Division of Chase Home Equity, a division of Chase.  (Supplemental

24   Declaration of James Halsey in Opposition to Chase's Motion ("Suppl. Halsey Decl."), ¶¶ 3, 6.)

25   Halsey began working for Chase on June 5, 2006.  Richard Kradel ("Kradel") was Halsey's

26   director supervisor during the entire time Halsey worked for Chase.  (*Id.*, ¶ 6.)  Kradel sent

27

28          [1] Both parties submitted evidentiary objections.  To the extent the Court relied on
     evidence objected to in resolving the parties' motions, the objections are overruled.  To the
     extent the Court did not need to consider such evidence in order to resolve the cross-motions,
     the Court need not rule on the admissibility of such evidence at this time.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Halsey to Orange County to train with Victoria Firestone ("Firestone"), another Chase account

2   executive, from June 7 through June 9, 2006.  (Declaration of Scott Bonagofsky in Support of

3   Halsey's Motion ("Bonagofsky Decl."), Ex. A (Deposition of Richard Kradel ("Kradel Depo.")

4   at 89:14-22, 95:6-11.)

5        Hours after the training concluded, Firestone sent Kradel an email criticizing Halsey's

6   behavior during the training session.  (Bonagofsky Decl., Ex. A (Kradel Depo.) at 96:2-15 &

7   Ex. 36.)  Kradel did not discuss Firestone's negative feedback with Halsey because Kradel

8   wanted to make his own judgment about Halsey's performance and did not want to jeopardize

9   his team's relationship.  (*Id.*, Ex. A at 98:19-99:12.)

10       Halsey attended the Western Secondary Conference in San Francisco on July 12 through

11  13, 2006.  (Declaration of James Halsey in Support of Halsey's Motion ("Halsey Decl.), ¶ 6.)

12  At this conference, Chase conducts business meetings with its clients.  (Bonagofsky Decl., Ex.

13  A (Kradel Depo.) at 124:16-24.)  During the first day of the Conference, the only meeting

14  Halsey was scheduled to participate in was cancelled.  When this meeting was cancelled,

15  Halsey left so he could work from home.  The next day, Kradel asked where Halsey went the

16  prior afternoon.  Halsey explained why he left the conference.  Kradel expressed his expectation

17  that Halsey should have stayed at the Conference even though the meeting had been cancelled.

18  (Halsey Decl. ¶ 6)

19       Despite Firestone's negative feedback and Halsey's leaving the Conference early, in

20  mid-July, Kradel told Halsey that his performance was on track with Kradel's expectations.

21  (*Id.*)  At that point, Kradel was not thinking of terminating Halsey and was pleased with his

22  performance.  (Bonagofsky Decl., Ex. A (Kradel Depo.) at 137:4-7, 138:9-139:5 & Ex. 42,

23  159:11-13.)

24       Kradel sent Halsey to the Dennis Black Training in Cleveland, Ohio from August 8

25  through August 10, 2006.  (Hasley Decl., ¶ 7; Bonagofsky Decl., Ex. A (Kradel Depo.) at

26  140:18-24.)  During the second day of the training, Halsey received positive feedback for his

27  performance during several role-playing exercises.  (Halsey Decl., ¶ 7.)  During the morning

28  break on that day, Kradel approached Halsey and said that he appeared to be nodding off during

2

United States District Court

For the Northern District of California

1   the morning session.  (*Id*.)  Halsey responded that he may have been drowsy because he had

2   flown cross-country from San Francisco to New York and then from New York to Cleveland.

3   (*Id*.)  Later that day on another break, it occurred to Halsey that his HIV medication was

4   probably the cause of his drowsiness.  Halsey was taking the following medications daily: 300

5   mg of Reyataz, 100mg of Norvir, and Truvada tablets, which include 200mg of Emtriva and

6   300 mg of Viread.  (*Id*., ¶ 8.)  Reyataz, Norvir, and Truvada, either singly or in combination,

7   can and often do cause fatigue in patients.  (Declaration of Nelia Sarmiento, ¶ 3.)

8          Halsey had not yet disclosed to Kradel that he was HIV-positive.  At 3:53 p.m. Eastern

9   Standard Time on August 9, 2006, Halsey emailed Kradel in which he explained that he is HIV-

10  positive and that he spoke to his doctor regarding the medications he recently switched to for

11  his HIV condition.  (Suppl. Halsey Decl., Ex. A.)  Halsey wrote that his doctor told him that his

12  new medications "absolutely could effect [his] energy levels and that is probably what [he had]

13  been experiencing."  (*Id*.)

14         Earlier that day, Kradel had invited Halsey and the three other account executives on

15  Kradel's team out to dinner that evening at the Hard Rock Café.  (Suppl. Halsey Decl., ¶ 13.)

16  Kradel said that they would meet at the elevator bank at 6:00 p.m. and then walk over to the

17  restaurant together.  (*Id*.)  However, when Halsey went to the elevator bank, none of the other

18  Chase employees were there.  (*Id*., ¶ 15.)  Halsey called Kradel at 6:00 and again at 6:03 p.m.,

19  but Kradel did not answer his phone.  (*Id*.)  Halsey thought this was odd because Kradel had

20  answered his phone whenever Halsey had called him before.  (*Id*.)  Halsey went to the Hard

21  Rock Café and looked for Kradel and the other account executives for approximately ten

22  minutes, but could not find them.  (*Id*.)  Halsey returned to his hotel room and called Kradel

23  again.  Halsey left Kradel three voice mail messages asking where everyone was.  Kradel did

24  not return any of these messages or mention receiving them when Halsey saw Kradel the next

25  day.  (*Id*.)

26         Halsey also called Andrew Ripp's ("Ripp") cell phone several times that evening, but he

27  did not answer.  The next morning, Ripp told Halsey that Kradel had changed the location of the

28

United States District Court

For the Northern District of California

1   dinner and told everyone to turn off their cell phones.  (*Id.*)  Halsey was never told about the

2   change of location on August 9, 2009.  (*Id.*)

3       After dinner on August 9, 2009, Kradel emailed Lisa Jelinksi ("Jelinski") in Human

4   Resources with Chase to discuss Halsey.  (Bonagofsky Decl., Ex. A (Kradel Depo.) at 150:14-

5   151:6 & Ex. 23.)  Kradel and Jelinski met at 10:00 a.m. on August 10, 2006.  (*Id.* at 160:19-

6   161:21.)  Kradel spoke to Jelinski about Halsey's training with Firestone, the Western

7   Secondary Conference, and the Dennis Black training.  (*Id.* at 161:23-162:5.)  Jelinski

8   suggested that disciplinary action or termination would be appropriate courses of action.  (*Id.* at

9   2-6.)

10      Kradel and Jelinski discussed that Halsey was HIV-positive and was taking medication

11  which he claimed caused his exhaustion.  (Bonagofsky Decl., Ex. B (Deposition of Lisa Jelinski

12  ("Jelinski Depo.) at 162:14-163:3 & Ex. 27, 175:9-24.)  Jelinski wrote that she wanted to

13  determine whether or not HIV was considered a disability.  (*Id.* at 175:3-8.)  Jelinski asked Pat

14  Sutton ("Sutton") if sleeping at work was some that needed to be accommodated, and Sutton

15  told her that it was not.  (*Id.* at 92:1-14, 186:3-18.)  Jelinsky did not explore with Halsey

16  whether Chase could accommodate his drowsiness.  (*Id.* at 186:19-22.)

17      During the last day of the Dennis Black training on August 10, 2009, Kradel did not

18  give Halsey any feedback after he completed his role-playing exercises.  During the entire day,

19  Kradel made conversation and eye contact with the other three account executives on his team,

20  but not with Halsey.  (Suppl. Halsey Decl., ¶ 16.)  Halsey would address Kradel, but Kradel

21  would not respond.  (*Id.*)

22      The last in-person interaction Halsey had with Kradel was at an afternoon meal at the

23  end of the Dennis Black training on August 10, 2009.  Halsey, Kradel, and the other three

24  account executives on Kradel's team went out for an early dinner together.  At the meal, Kradel

25  interacted with the other account executives but stopped interacting directly with Halsey.  (*Id.*)

26      By August 11, 2006, Kradel decided to terminate Halsey's employment.  (Bonagofsky

27  Decl., Ex. A (Kradel Depo.) at 178:6-22 & Ex. 26.)  Kradel stated in an email that he decided

28  on termination because Halsey demonstrated that he could not work independently.  (*Id.*, Ex. 26

4

1    to Ex. A.)  Kradel testified that Halsey's sleeping or being drowsy at the Dennis Black training

2    was the reason he decided to terminate him.  (*Id*., Ex. A at 178:23-179:5.)

3          On August 15, 2006, Kradel and Jelinski called Halsey to inform him that he was being

4    terminated and read him the termination letter.  (*Id*., Ex. A at 187:19-188:7.)  The reasons for

5    the termination stated in the letter were sleeping at work, departing early, being late for

6    meetings, and behavior during training.  (*Id*., Ex. A at 182:18-24 & Ex. 19.)

7                                              **ANALYSIS**

8    **A.     Legal Standard.**

9          Summary judgment is proper when the "pleadings, depositions, answers to

10   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

11   genuine issue as to any material fact and that the moving party is entitled to judgment as a

12   matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

13   for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*,

14   477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.

15   *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the

16   evidence or make credibility determinations, and is required to draw all inferences in a light

17   most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

18   1997).  A principal purpose of the summary judgment procedure is to identify and dispose of

19   factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The

20   party moving for summary judgment bears the initial burden of identifying those portions of the

21   pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

22   material fact.  *Id*. at 323.  Where the moving party will have the burden of proof on an issue at

23   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

24   the moving party.  *Id*.  Once the moving party meets this initial burden, the non-moving party

25   must go beyond the pleadings and by its own evidence "set forth specific facts showing that

26   there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must "identify

27   with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*,

28   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

United States District Court
For the Northern District of California

(7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**B.      Chase's Motion for Summary Judgment.**

      **1.      Halsey's Claim of Disability Discrimination.**

Halsey contends that he was terminated because of his HIV status.  In order to prevail on his disability claims, Halsey first must establish a *prima facie* case of discrimination.  *See, e.g., Raytheon Co. v. Hernandez,* 540 U.S. 44 (2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To establish a *prima facie* case of disability discrimination, Halsey must show that: (1) he is disabled; (2) he is "otherwise qualified" for the position, with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability.  *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Jenson v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2000).  If Halsey establishes his *prima facie* case, the burden shifts to Chase to offer a legitimate non-discriminatory reason for the adverse action.  If Chase proffers such a reason, the burden shifts back to Halsey to show that Chase's reason is actually a pretext for discrimination.  *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990) (citing *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir. 1987)).

The parties do not dispute that being HIV-positive qualifies as having a disability under California law.  However, the parties do dispute whether being terminated for sleeping, if sleeping or being drowsy was a side effect of Halsey's HIV medication, constitutes impermissible discrimination based on a disability.  A disability may result from side-effects of medication.  *McAlindin v. County of San Diego*, 192 F.3d 1226, 1236 (9th Cir. 1999).  Moreover, an employer's failure to accommodate drowsiness due to medication can constitute a failure to accommodate.  *Id.*, at 1236-37.  In *McAlindin*, the plaintiff employee was given a written warning by his supervisor for sleeping at work, despite the fact that he had informed his supervisor that his doctor had prescribed medications that made him drowsy.  *Id.* at 1231.  The court found that the employer failed to demonstrate that finding a way to accommodate the

United States District Court
For the Northern District of California

plaintiff's drowsiness due to his medication would have imposed an undue burden. *Id*. at 1236-37.

Chase argues that courts have repeatedly approved of ADA-challenged discharges for falling asleep at work. However, the Court notes that none of the authorities Chase relies on are from the Ninth Circuit. In fact, two of the cases on which Chase relies are from the Seventh and Eighth Circuits. In *Dark v. Curry County*, the Ninth Circuit noted that its approach differs from the more "unforgiving approach" exhibited by the Seventh and Eighth Circuit. *See id*., 451 F. 3d 1078, 1090 n.9 (9th Cir. 2006). The court in *Dark* further explained that, although courts have recognized a distinction between termination because of misconduct and termination because of a disability, "[w]ith few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Id*. at 1084 (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001)). Chase has not shown that terminating Halsey for sleeping, a side-effect of his medication for HIV, would not be considered to be a part of Halsey's disability.

Finally, the cases on which Chase relies are readily distinguishable based on their facts. In *Leonberger v. Martin Marietta Materials, Inc.*, 231 F.3d 396, 399 (7th Cir. 2000), the plaintiff was observed sleeping while operating large, and potentially dangerous, equipment. The Court found that because an employee who is less than fully alert while operating such equipment could harm himself or others, the employer justifiably terminated the employee based on his performance on the job and not any discriminatory animus. *Id*.

In *Cannon v. Monsanto Co.*, 2008 WL 236922, *4 (E.D. La. Jan. 28, 2008), the employer submitted evidence demonstrating that staying awake was an essential function of the plaintiff's position, which involved performing electrical work and monitoring a plant reactor. Therefore, the court found that due to his sleeping on the job, Plaintiff was not able to perform the essential functions of his "safety-sensitive job" and, thus, was not a qualified individual with a disability. *Id*. Similarly, in *Brown v. Triboro Coach Corp.*, 153 F. Supp. 2d 172, 185 (E.D.N.Y. 2001), the court found that the plaintiff was not able to perform the essential functions of his job because the sleep apnea he suffered from rendered him unable to operate a bus safely.

7

In *Hill v. Kansas City Area Transportation Authority*, 181 F.3d 891, 892-93 (8th Cir. 1999), the plaintiff was discharged as a bus driver for twice falling asleep while assigned to a bus route. The employer had a work rule stating that two incidents of sleeping on the job would result in discharge. Notably, the plaintiff did not tell her supervisor that medications had caused her to fall asleep on the job. *Id*. at 893. In this context, the court found that the plaintiff was not terminated on account of her disability. *Id*. at 894.

The Court finds that Halsey has submitted sufficient evidence to demonstrate both a *prima facie* case of discrimination and of pretext. The evidence viewed in the light most favorable to Halsey demonstrates that Kradel made the decision to terminate Halsey based on his falling asleep or "nodding off" during the Dennis Black training and that Halsey told Kradel that his medication could effect his energy levels.[2] Chase does not dispute that has a disability or that Halsey was terminated. Chase only disputes whether Halsey has demonstrated that he could perform the essential functions of his position. However, Chase has not demonstrated that sleeping or nodding off during a training session rendered Halsey unable to perform the essential functions of an account executive. Based on the positive feedback Halsey received before he was terminated and the document demonstrating that Halsey out performed another account executive hired at the same time he was, the Court finds that Halsey has satisfied his burden to demonstrate a *prima facie* case.

The Court also finds that Halsey has submitted sufficient evidence to create a question of fact regarding whether Chase's proffered reason for termination was pretextual. Notably, only a couple of hours after Halsey informed Kradel that he was HIV-positive, Kradel changed the location of a dinner, did not tell Halsey of the change, and told the other account executives to turn off their cell phones. The next day, Kradel would not interact with or make eye contact with Halsey. The following day, Kradel made the decision to terminate Halsey. Such conduct gives rise to an inference of discriminatory animus.

---

[2] Although the written recommendation for termination provides additional reasons for discharging Halsey, the evidence viewed in the light most favorable to Halsey demonstrates that Kradel did not find the other reasons sufficient cause for termination. Halsey's sleeping or nodding off at the Dennis Black training was the but for cause of Halsey's termination.

United States District Court

For the Northern District of California

1    Moreover, the evidence creates a question of fact regarding whether Chase's proffered

2    reasons for terminating Halsey are credible.  Up until the Dennis Black training, during which

3    Halsey informed Kradel that he was HIV-positive, Kradel was not thinking of terminating

4    Halsey and was pleased with his performance.  However, Kradel's written recommendation for

5    termination includes alleged performance issues that occurred before the Dennis Black training.

6    Therefore, the Court finds that Halsey has demonstrated a question of fact regarding whether

7    Chase's proffered reason is actually a pretext for discrimination.  Accordingly, the Court denies

8    Chase's motion for summary judgment on Halsey's claims for disability discrimination.[3]

9    **2.    Halsey's Claim for Sexual Orientation Discrimination.**

10   Halsey contends that, in addition to terminating him because he is HIV-positive, Kradel

11   made the decision to terminate him because his is gay.  However, Halsey did not tell Kradel that

12   he was gay until after he was terminated.  Chase submits undisputed evidence that Kradel had

13   not been aware that Halsey was gay and was surprised by Halsey's disclosure.  (Declaration of

14   Robert E. Belshaw, Ex. C (Jelinski Depo.) at 251:11-21.)  Based on such evidence, Halsey has

15   not demonstrated a question of fact regarding whether Kradel terminated him because he is gay.

16   Accordingly, the Court grants Chase's motion on this claim.

17

18   **3.    Halsey's Failure to Accommodate and Failure to Engage in Interactive Process Claims.**

19   It is an unlawful employment practice for "an employer to fail to engage in a timely,

20   good faith, interactive process with the employee or applicant to determine effective reasonable

21   accommodations, if any, in response to a request for reasonable accommodation by an

22   employee or applicant with a known physical or mental disability or known medical condition."

23   Cal. Gov't Code § 12940(n).  FEHA requires that employers and employees engage in a good-

24   faith interactive process to explore reasonable accommodation.  *Velente-Hook v. Easter Plumas

25   Health Care*, 368 F. Supp. 2d 1084, 1097 (E.D. Cal. 2005).  The standard for FEHA violations

26

27   [3] Because the Court finds that material questions of fact preclude summary judgment on Halsey's claim for disability discrimination, the Court similarly finds that summary judgment is precluded on Halsey's claims for failure to take reasonable steps to prevent

28   discrimination, failure to take corrective action, aiding or abetting discrimination, and wrongful termination in violation of public policy.

for failure to engage in the interactive process tracks the standard for ADA violations. *Id.* "'The interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA.'" *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 261 (2000) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000)).  This obligation is "'triggered by an employee . . . giving notice of the employee's disability and the desire for accommodation.'" *Id.* (quoting *Barnett*, 228 F.3d at 1114).  The process requires good faith communication by both parties as a means of achieving the shared goal of identifying an accommodation that would enable the employee to perform his job effectively. *Id.* "Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001).

In order to prevail on his claim alleging a failure to accommodate, Halsey bears the initial burden to show the existence of a reasonable accommodation. *See Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 (9th Cir. 1999).  However, "[o]nce an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey*, 239 F.3d at 1137.  Although the employee generally bears the burden of initiating the interactive process, the burden falls on the employer "where the employer is aware of or recognizes the employee's need for accommodation." *Stoll v. The Hartford*, 2006 WL 3955826, *5 (S.D. Cal. Nov. 7, 2006).  If the employer fails to engage in the interactive process, summary judgment is only available to the employer "if a reasonable finder of fact *must* conclude that there would in any event have been no reasonable accommodation available." *Dark*, 451 F.3d at 1088 (emphasis in original) (internal quotation marks and citation omitted).

Both Chase and Halsey move for summary judgment on Halsey's failure to engage in the interactive process claim.  It is undisputed that after Kradel confronted Halsey about sleeping during the Dennis Black training, Halsey sent Kradel an email informing Kradel that he is HIV-positive and that his doctor told him that his HIV medication could affect his energy

United States District Court

For the Northern District of California

1    levels.  However, the parties dispute whether this email was sufficient to inform Chase of

2    Halsey's need for an accommodation.  The Court finds that read in the light most favorable to

3    Halsey, that Chase was on notice of Halsey's need for an accommodation and failed to engage

4    in the interactive process.  Although Chase argues ad nauseam about the distinction between the

5    words sleep, fatigue, drowsiness, and energy levels, the Court finds that Halsey's evidence

6    regarding his energy level and fatigue are sufficient to show that his medication could have

7    been the cause of his sleeping or "nodding off" during the Dennis Black training, or at least

8    appearing to be sleeping or "nodding off."  However, read in the light most favorable to Chase,

9    the Court cannot find that a reasonable juror could not find that Halsey's email was equivocal

10   and that someone might have low energy but still be able to stay away at work.  Therefore, the

11   Court denies both parties' motions on Halsey's failure to engage in the interactive process

12   claim.

13         Moreover, because the Court finds that viewing the evidence in the light most favorable

14   to Halsey, that Chase failed to engage in the interactive process, summary judgment is only

15   available to Chase on the failure to accommodate claim "if a reasonable finder of fact *must*

16   conclude that there would in any event have been no reasonable accommodation available."

17   *Dark*, 451 F.3d at 1088 (emphasis in original) (internal quotation marks and citation omitted).

18   Halsey argues that Chase could have modified his work schedule to allow for more frequent

19   breaks.  Chase does not submit any evidence to dispute that this accommodation would have

20   been reasonable.  Therefore, the Court cannot find that a reasonable juror *must* conclude that no

21   reasonable accommodation was available.  Accordingly, the Court denies Chase's motion on

22   Halsey's failure to accommodate claim.

23         **4.      Halsey's Intentional Infliction of Emotional Distress Claim.**

24         The elements of a claim for intentional infliction of emotional distress are: "(1)

25   outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

26   probability of causing emotional distress, (3) severe emotional suffering and (4) actual and

27   proximate causation of the emotional distress."  *Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148,

28   155 n.7 (1987); *see also Lee v. Aiu*, 85 Haw. 19, 34 & n.12 (1997).  As the court noted in *Cole*,

this tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent

society, of a nature which is especially calculated to cause, and does cause, mental distress." *Id*.

Chase argue that Halsey's claim for intentional infliction of emotional distress fails

because Halsey has not demonstrated that Chase engaged in outrageous conduct.  In *Janken*, the

court found that "[m]anaging personnel is not outrageous conduct beyond the bounds of human

decency, but rather conduct essential to the welfare and prosperity of society." 46 Cal. App. 4th

55, 80 (1996).  Therefore, the court held that "[a] simple pleading of personnel management

activity is insufficient to support a claim of intentional infliction of emotional distress, even if

improper motivation is alleged.  If personnel management decisions are improperly motivated,

the remedy is a suit against the employer for discrimination."  *Id*.  Courts have followed the

holding in *Janken* and dismissed intentional infliction of emotional distress claims premised on

personnel management decisions.  *See e.g. Walker v. Boeing Corp*, 218 F. Supp. 2d 1177, 1190

(C.D. Cal. 2002) ("Terminating an employee for improper or discriminatory reasons, like many

adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to

a claim for intentional infliction of emotional distress."); *see also Helgeson v. Amer. Intern.*

*Group, Inc.*, 44 F. Supp. 2d 1091, 1097 (S.D. Cal. 1999); *Bradshaw v. Glatfelter Ins. Group*,

2009 WL 1438265, *4 (E.D. Cal. May 20, 2009); *Bragg v. East Bay Regional Park Dist.*, 2003

WL 23119278, *8-9 (N.D. Cal. Dec. 29, 2003); *but see Jelincic v. Xerox Corp*, 2004 WL

2217643, *6 (N.D. Cal. Oct. 1, 2004) (limiting the holding in *Janken* to IIED claims against

supervisory employees and finding *Janken* inapposite to IIED claim against an employer).

Chase's alleged conduct merely constitutes personnel management decisions.  Therefore,

Halsey has not submitted any evidence demonstrating the existence of a question of fact

regarding whether Chase engaged in outrageous conduct necessary for his claim of intentional

infliction of emotional distress.  The Court therefore grants Chase's motion for summary

judgment on this claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

Chase's motion for summary judgment as follows: The Court GRANTS Chase's motion as to

United States District Court

For the Northern District of California

12

1   Halsey's claim for sexual orientation discrimination and claim for intentional infliction of

2   emotional distress and DENIES the remainder of Chase's motion.  The Court DENIES Halsey's

3   motion for partial summary judgment.  .

4        **IT IS SO ORDERED.**

5

6   Dated: October 16, 2009                                    _____

7                                                              JEFFREY S. WHITE
                                                               UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California